# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION, | |
| Plaintiff/Counterclaim Defendant, | |
| v. | |
| KRIS TAKAS, | |
| Defendant. | MEMORANDUM DECISION AND ORDER |
| KRIS TAKAS | Case No. 2:17-CV-204-DAK |
| Counterclaim/Third-Party Plaintiff, | Judge Dale A. Kimball |
| v. | |
| FEDERAL NATIONAL MORTGAGE ASSOCIATION; CIT GROUP, a legal successor in interest to Financial Freedom Senior Funding Corporation; and BEN CARSON, in his capacity as Secretary of the United States Department of Housing and Urban Development, | |
| Counterclaim/Third-Party Defendants. | |

This matter is before the court on Plaintiff and Counterclaim Defendant Federal National Mortgage Association ("FNMA") and Third-Party Defendant CIT Bank, N.A.'s ("CIT Bank's"), improperly sued herein as CIT Group, Inc., Motion to Dismiss the First Fourteen Causes of Action in Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff Kris G. Takas's Counterclaim and on Third-Party Defendant Ben Carson's Motion to Dismiss for Failure to State a Claim. A hearing on the motions was held on July 6, 2017. At the hearing, FNMA and CIT Bank were represented by Bradley Tilt and Brad DeHaan. Ben Carson was represented by John Mangum and David Sahli. Ms. Takas was represented by Nick J. Colessides. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the matter under advisement, the court has further considered the law and facts relating to the matter. Now being fully advised, the court renders the following Memorandum Decision and Order.

**BACKGROUND**

On August 21, 2006, Sam S. Takas and Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff Kris G. Takas, as grantors, executed a quitclaim deed to Sam S. Takas, an individual, which transferred title to real property located at 911 Mark Avenue, Salt Lake City, Utah. The quitclaim deed was recorded on August 25, 2006, in the Salt Lake County Recorder's Office. Also on August 21, 2006, Sam S. Takas executed an Open-End Adjustable Rate Home Equity Conversion Deed of Trust ("2006 Reverse Mortgage"), which was recorded on August 25, 2006, in the Salt Lake County Recorder's Office.

On October 12, 2007, Sam S. Takas executed a second Open-End Adjustable Rate Home Equity Conversion Deed of Trust ("2007 Reverse Mortgage"), which was recorded on October

19, 2007, in the Salt Lake County Recorder's Office. On or about October 31, 2007, Sam S. Takas, as grantor, executed a warranty deed transferring title of the property to Sam S. Takas and Kris Takas. The warranty deed was recorded in the Salt Lake County Recorder's Office on November 7, 2007.

On or about October 4, 2011, Sam S. Takas passed away. Under the terms of the 2007 Reverse Mortgage, and after notice and failure to pay, Third-Party Defendant CIT Bank, N.A. ("CIT Bank"), improperly sued herein as CIT Group, Inc., foreclosed the 2007 Reverse Mortgage, and the property was sold at a Trustee's Sale on December 3, 2012, to Counterclaim Defendant Federal National Mortgage Association ("FNMA"). On April 23, 2013, FNMA served a Notice to Quit on Ms. Takas. On May 13, 2013, Ms. Takas was served with a summons and complaint filed by FNMA in the State of Utah, Third District Court, alleging Ms. Takas was in unlawful detainer. On May 23, 2013, Ms. Takas filed an answer, counterclaim, and third-party complaint in the action, after the case was moved to the United States District Court for the District of Utah. The matter was remanded back to the state court in October 2013, and the state court dismissed the entire action on non-substantive grounds without prejudice on April 15, 2016.

On or about August 9, 2016, FNMA filed an unlawful detainer Complaint against Ms. Takas in this matter, relying upon the April 23, 2013, Notice to Quit. On February 9, 2017, Ms. Takas filed her Answer, Counterclaim, and Third-Party Complaint, which included claims against Third-Party Defendant Ben Carson and CIT Bank. Mr. Carson is the Secretary of the Department of Housing and Urban Development ("HUD"). On March 20, 2017, Third-Party

Defendant Ben Carson removed this case to the United States District Court for the District of Utah.

On March 27, 2017, FNMA filed a Motion to Dismiss the First Fourteen Causes of Action in Ms. Takas's Counterclaim and Third-Party Complaint, which CIT Bank joined. On May 8, 2017, Ben Carson filed a Motion to Dismiss for Failure to State a Claim. Both motions have been fully briefed.

## DISCUSSION

Although Ms. Takas has included several state and federal claims in her counterclaim and third-party complaint, the court will first address the claims against federal agencies and pursuant to federal law to determine whether the case should remain in federal court or be remanded back to the state court. Therefore, the court will first discuss Mr. Carson's Motion to Dismiss for Failure to State a Claim and will next address the arguments in FNMA and CIT Bank's motion to dismiss related to the counterclaim and third-party claim based on federal law.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a party may move the court to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Because the Constitution of the United States only grants federal courts jurisdiction over actual cases or controversies, *see* U.S. Const. art III, § 2, cl. 1, "[i]f a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). "Standing is a jurisdiction threshold for bringing a case in federal court [because] [i]t tests whether a case

or controversy exists." *Smallwood v. Scibana*, 227 Fed. Appx. 747, 748 (10th Cir. 2007) (unpublished). "Mootness is implicated when a case or controversy, originally present, ceases to exist." *Id.*

Under Federal Rule of Civil Procedure 12(b)(6), a party may move a court to dismiss a complaint if the plaintiff has not alleged sufficient facts, taken as true, to show that the claim for relief is plausible on its face. Fed. R. Civ. P. 12(b)(6); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570-72 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## BEN CARSON'S MOTION TO DISMISS

**Mootness**

Mr. Carson first argues that Ms. Takas's claims against him should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) because they are not a proper case or controversy under the doctrine of mootness. "When it becomes impossible for a court to grant effective relief, a live controversy ceases to exist, and the case becomes moot. *Kan. Judicial Review v. Stout*, 562 F.3d 1240, 1246 (10th Cir. 2009).

In this case, Ms. Takas is asking for declaratory relief that the Department of Housing and Urban Development ("HUD") failed to properly implement 12 U.S.C. § 1715z-20(j) and injunctive relief to protect Ms. Takas from foreclosure and displacement. But Mr. Carson argues that these claims are moot.

Mr. Carson's arguments are partially based on the fact that HUD has already amended its Home Equity Conversion Mortgage ("HECM") program regulations and requirements. Unlike a traditional mortgage which provides borrowers with a lump sum in order to purchase a home, an HECM, also known as a reverse mortgage, gives homeowners the ability to convert "a portion of

5

accumulated home equity into liquid assets." 12 U.S.C. § 1715z-20(a). This is accomplished by the lender providing an elderly homeowner with some "combination of a lump sum payment, monthly payments, or a line of credit" that is secured by a mortgage on the borrower's home and that is subject to a monthly interest charge. *Plunkett v. Castro*, 67 F. Supp. 3d 1, 6 (D.D.C. 2014) (citation omitted). "[A]n HECM loan is generally not repaid until a specific 'trigger' event occurs, such as the death of the borrower or the sale of the home," and an HECM is a non-recourse loan, meaning "the lender may only recover the borrower's house (or the sale value thereof)." *Id.* (citation omitted). As a non-recourse loan, an HECM creates a risk that "the lender may suffer a financial loss if the value of the home at the time of the triggering event is less than the outstanding balance on the HECM loan." *Id.*

In order to encourage lenders to offer HECM loans to elderly homeowners, Congress statutorily created an insurance program administered by HUD to insure the lenders against the potential financial loss. However, under the statutory framework provided by Congress, an HECM must meet certain conditions in order to be eligible for HUD's insurance program. The condition most relevant to this case states:

> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner.

12 U.S.C. § 1715z-20(j). When HUD initially issued regulations to implement the terms of this provision, the regulations required an HECM loan to "state that the mortgage balance will be due

6

and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor." 24 C.F.R. § 206.27(c)(1).

In a case similar to this one, the United States District Court for the District of Columbia, on remand from the United States Court of the Appeals for the District of Columbia Circuit, concluded that HUD's regulation offering protections to a surviving mortgagor was inconsistent with the statute offering protections to the spouse of a homeowner. *See Bennett v. Donovan*, 4 F. Supp. 3d 5, 9-14 (D.D.C. 2013). Upon remand of the case from the district court to HUD, HUD issued Mortgage Letter 2014-07, which provided that, for all HECM loans initiated after August 4, 2014, "the HECM documents will contain a provision deferring the due and payable status of the loan until the death of the non-borrowing spouse." *Plunkett*, 67 F. Supp. 3d at 7.

In an attempt to remedy the potentially unequal treatment of borrowers on HECM loans that were initiated before August 4, 2014, HUD later issued Mortgage Letter 2015-03. Mortgage Letter 2015-03 provides lenders of HECM loans issued before August 4, 2014, with the Mortgagee Optional Election ("MOE"), which allows the lenders to elect, at their sole option, to assign the loans to an administration within HUD instead of electing to foreclose as allowed by the HECM loan documents. *See Bombet v. Donovan*, No. CIV.A.13-118-SDD, 2015 WL 1276569, at *4 (M.D. La. Mar. 19, 2015). Mortgage Letter 2015-03 was superseded and replaced by Mortgage Letter 2015-15, which left in place the MOE but clarified that HUD was not interfering with the rights retained by lenders under the original mortgage contracts.

If a lender used the MOE by assigning the HECM to HUD, HUD could then protect the non-borrowing spouse by deferring the loan obligations until the death of the non-borrowing spouse. However, if a lender chose to pursue foreclosure instead of the MOE "according to the

7

terms of a lawfully executed mortgage contract," the plaintiff "would lack standing to bring suit against HUD" because "the lenders are independent of HUD's control." *Bennett v. Donovan*, 703 F.3d 582, 588 (D.C. Cir. 2013).

In this case, the court agrees that Ms. Takas's claims against HUD are moot because HUD has already provided the relief that Ms. Takas is requesting to the extent that it has the authority to provide that relief. Specifically, Ms. Takas is asking for declaratory relief that HUD failed to properly implement 12 U.S.C. § 1715z-20(j). However, the United States District Court for the District of Columbia has already concluded that HUD failed to properly implement the statute, and HUD has changed its regulations to be consistent with the statute. Ms. Takas also requests injunctive relief against HUD to protect Ms. Takas from foreclosure and displacement. However, HUD is not a party to the 2007 Reverse Mortgage, and HUD does not have authority to alter the terms of an existing contract between a borrower and a lender. HUD does have authority to accept the assignment of an HECM loan and to defer foreclosure on any HECM loans that have been assigned to HUD, but HUD cannot require a lender to assign an HECM to HUD. HUD has already implemented procedures that would allow the lender on the 2007 Reverse Mortgage to assign the HECM loan to HUD at the lender's sole discretion. But the lender in this case did not elect to assign the loan to HUD, and the time period for assigning the loan has passed.

Therefore, the court concludes that HUD has already provided the relief that Ms. Takas is requesting to the extent that it has the authority to provide that relief, and, therefore, the court concludes that Ms. Takas's claims against HUD are moot.

**Standing**

"To establish Article III standing, Plaintiff must satisfy three criteria: injury must be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). In terms of redressability, when a plaintiff's injury results from a government regulation of a third party, the plaintiff must establish that, if the court grants the requested relief, the third party will exercise its discretion in a manner that will redress plaintiff's injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Mr. Carson argues that Ms. Takas lacks standing because Ms. Takas's alleged injury is neither fairly traceable to HUD's actions nor redressable by the present action. Specifically, Mr. Carson argues that FNMA independently elected not to pursue the HUD-provided alternative to foreclosure and eviction, a decision that is at the sole discretion of the lender, and HUD does not have the authority to prevent a lender from foreclosing on property and evicting a tenant in accordance with the terms of existing HECM loan documents. Mr. Carson further argues that Ms. Takas cannot show, even if HUD took actions to try to redress Ms. Takas's alleged injury, that FNMA would exercise its discretion in a manner that would redress Ms. Takas's injury. In fact, HUD already provided a means to redress Ms. Takas's alleged injury, and FNMA exercised its discretion in a manner that would not redress Ms. Takas's injury. Therefore, Mr. Carson argues that Ms. Takas lacks standing to pursue her claims against HUD.

The court agrees with Mr. Carson that Ms. Takas's alleged injury is not redressable by the present action against HUD. HUD is not a party to the 2007 Reverse Mortgage and has no authority to alter the terms of the loan. Under the circumstances present in this case, the 2007

9

Reverse Mortgage allows for the lender to pursue foreclosure, and HUD does not have authority to alter the terms of existing HECM loans. *See Bombet v. Donovan*, No. CIV.A.13-118-SDD, 2015 WL 1276569, at *3 (M.D. La. Mar. 19, 2015) ("[P]ursuant to the private contract between the mortgagee and mortgagor, the mortgagee may still choose to foreclose on the non-borrower surviving spouse, despite the fact that as a result of Mortgage Letter 2014-07, HUD will no longer insure contracts that fail to protect a surviving spouse."). HUD did provide lenders with an alternative to foreclosure by providing for the option to assign the HECM loans to HUD through the MOE. But HUD cannot force the lenders to choose to take advantage of the MOE, and lenders remain free to pursue foreclosure if foreclosure is allowed under the terms of the HECM loan. In this case, FNMA chose to pursue foreclosure instead of electing to take advantage of the MOE.

Even if the court were inclined to order HUD to provide some form of relief to Ms. Takas, the statute prevents the court from requiring HUD to provide alternatives to foreclosure and from requiring HUD to accept assignments of mortgages. *See* 12 U.S.C. § 1715u(f) ("No provision of this Act, or any other law, shall be construed to require [HUD] to provide an alternative to foreclosure [for lenders with insured mortgages] or to accept assignments of such mortgages."); *see also Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004) ("The only agency action the court can compel is discrete agency action that is legally required."). Because HUD has no authority to require the lender to pursue an option that protects the surviving, non-borrowing spouse, the court concludes that Ms. Takas has not shown redressability sufficient to demonstrate Article III standing in her claims against HUD.

# FNMA AND CIT BANK'S MOTION TO DISMISS

Although FNMA and CIT Bank moved to dismiss Ms. Takas's first fourteen causes of action, the court will first address the portion of the motion moving to dismiss Ms. Takas's Eighth Cause of Action because Ms. Takas's Eighth Cause of Action is the only cause of action against FNMA and CIT Bank based on federal law. Because the court concludes that Ms. Takas's Eighth Cause of Action should be dismissed, the court will not address the remainder of FNMA and CIT Bank's arguments but will instead remand the remainder of the case back to the state court.

Ms. Takas's Eight Cause of Action against FNMA and CIT Bank is for alleged violation of 12 U.S.C. § 1715z-20(j). Ms. Takas claims that FNMA and CIT Bank violated Section 1715z-20(j) by not deferring foreclosure the property until after the death of Ms. Takas. FNMA and CIT Bank argue that the statute is inapplicable and irrelevant because the statute only regulates whether HUD may or may not insure a reverse mortgage but does not alter or speak to the enforceability of existing HECM loans and their terms.

The court agrees with FNMA and CIT Bank. As described above, 12 U.S.C. § 1715z-20(j) prohibits the Secretary of HUD from insuring HECM loans unless the loan obligation is deferred until the death of the homeowner, which includes the spouse of a homeowner. 12 U.S.C. § 1715z-20(j). By its terms, Section 1715z-20(j) does not apply to lenders and does not affect the validity or enforceability of the terms of contracts between lenders and borrowers. *See Bennett v. Donovan*, 703 F.3d 582, 586, 588-89 (D.C. Cir. 2013) (recognizing that HECM loans are enforceable even if HUD should never have insured them); *Aldi v. Wells Fargo Bank, NA*, 2015 WL 3650297, at *7 (D. Conn. Feb. 17, 2015) ("[T]he Court agrees with defendants that 12

U.S.C. § 1715z-20 governs HUD's insurance of reverse mortgages, not the independent contractual relationship between mortgagors and mortgagees."). Even if the terms of the statute did apply directly to lenders, the court also notes that the statute does not provide for a private cause of action. *See, e.g.*, *Santos v. Reverse Mortgage Solutions, Inc.*, 2013 WL 5568384, at *6 (N.D. Cal. Oct. 9, 2013) (recognizing that no private right of action exists under the National Housing Act).

In terms of the facts present in this case, Section 1715z-20(j) does not alter or speak to the enforceability or the validity of the 2007 Reverse Mortgage or its contractual terms. The statute only addresses HUD's authority to insure the 2007 Reverse Mortgage and does not provide for a private cause of action. Therefore, the court concludes that Ms. Takas's Eighth Cause of Action against FNMA and CIT Bank is dismissed because the Section 1715z-20(j) is inapplicable to the validity or enforceability of the 2007 Reverse Mortgage.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that FNMA and CIT Bank's Motion to Dismiss the First Fourteen Causes of Action in Ms. Takas's Counterclaim [Docket No. 4] is GRANTED only with respect to the Eighth Cause of Action, and Mr. Carson's Motion to Dismiss for Failure to State a Claim [Docket No. 33] is GRANTED. Third-Party Defendant Backman Title Services' Motion for Judgment on the Pleadings [Docket No. 35] is also GRANTED AS MOOT pursuant to the court's June 2, 2017, Order dismissing all claims against Backman Title Services.

Because this Memorandum Decision and Order dismisses all of the claims against federal agencies and pursuant to federal law, the court also REMANDS this action back to the state court to resolve all remaining claims, counterclaims, and third-party claims in this action.

DATED this 14th day of July, 2017.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge